and we'll turn to 20-8005 Blackburn v. United States. Mr. Ferguson Sturgill. Mr. Sturgill, your mic is muted so you might want to unmute that before we proceed. Thank you, Your Honor. Okay, very good. Very good. Is it Hugus? It is Hugus. Okay, good. Mr. Hugus, you may proceed. All right. Excuse me, there's a notification asking me to start my video but I think it looks like you're all set from this point of view. Okay, great. Well, if it pleases the court, this is a case about whether the U.S. is liable under the Federal Tort Claim Act for the improper sexual touching of a patient by a doctor of a deemed entity during a gynecological exam. And the answer is yes for three reasons. The first is that this case arises out of negligence. And our position is that the negligence involved in this case involved a professional failure to recognize and manage sexual attraction and control sexual inhibitions in the examination room. And it's a case that involves, you know, this type of examination involves subtlety and substantial consent already. The consent to go to an examination room to derobe, address, and to consent to touching in the private areas involves substantial consent. And as we address in our brief, this is not the same type of case where someone goes in for, you know, I guess a non-sexual type medical reason, like an earache or a chest cold, and is told to undress and then is subsequently fondled by the health care provider. The informed case paradigm, the informed consent paradigm that you're talking about, is one in which the physician is providing care, actually going about the job of doing a medical procedure, but because there was not informed consent, that individual could be deemed to have committed a battery. In this situation, the physician in question, I don't think there's any suggestion unless you can tell me to the procedure. There was no, I mean, that was, why was that not purely an assault and battery? Yeah, thank you. The question, I think, if I understand that you're addressing, comes after this first inquiry as to whether or not the case as a threshold question arises out of assault and battery or out of negligence. And in analogizing this case to the Benavides case, we think it's the same. I mean, that was a case that involved sexual interaction, providing alcohol and the types of things that would be, that could constitute an intentional sexual type tort. But this court said, no, those actually arise out of negligence because they're consent. And I think the subtlety is very important here because, again, if I went into the examination room and I said, I've got a problem up here and you said, let me feel your breasts, that would just be blatant. But she consented to be on the examination table, to get up on the table, to undress, to be touched on her breasts, in her genitals and in that area. It sounds to me like you could convert any battery case into a negligence case by saying that the batterer was negligent in not controlling his emotions. I have, I have, I have anger problems and I haven't, I've been negligent, not dealing with them. So I hit this person. So this is not a battery claim. This is a, this is a negligence claim. I've never heard of that theory before. I can understand that negligence can, it could be negligent conduct by a psychotherapist for not taking care to prevent manipulating the emotions of the patient so that the patient consents to what would otherwise be tortious conduct. Right. So I think there's two pieces to that. What you're talking about, the transference phenomenon, and I understand that was an important piece of this course, a decision in the Benavides case, going back to this, you know, this anger question. I mean, couldn't, couldn't you say the same thing? Every doctor should use discretion and not, I think as the, as the U.S. put it in their brief, doesn't take professional discretion not to grope a patient, doesn't take professional discretion not to be there's a very close connection, like physically very close. Like, and I sat through the criminal trial in this, in the underlying case. And this was very important. There were like videos talking about how close are the fingers and did they move an inch too far this way or an inch too far this way? And did it cross the line? And that's just completely different than saying, well, I didn't but this doctor was tasked with touching this woman's genitals. That was his professional job. And the idea is he did it in a way that crossed the line. And as with the psycho, the psycho analytical context, the, you know, when you're dealing with a psychologist or mental health provider in that transference phenomenon, the, the, the onus is on the provider to manage that in this case too, because that transference works both ways. There's transference and counter transference. There's this idea that some patients may say, oh, I look up to you as the therapist and see you as my father or my mother, but it goes the other way too. And the literature documents that, that psychologists can transfer their own feelings to, to their patient. And that's what happened in the Benavides case. And similarly in this case, and, and, and again, some of the authority that we cited from the gynecological literature talk about that very phenomenon. I know this court only addressed it and said, this is a pretty unique thing to the psychological point in the Benavides cases, there was consent. So there wasn't a battery. What the tort committed by the therapist in that case was negligence and not preventing this transference phenomena, which ultimately led to the patient's consent. So there, there was a consensual, there was a consensual contact in that case here. There's clearly a non-consensual contact. There was a bat, there was a battery here. And you're saying because the battery occurred as a result of the physician's failure, negligent failure to control his passion, then that changes the battery to a tort of negligence. And that's, that's a new idea. What this court said in the Benavides case is, and I, here's why I think it's analogous. It says merely reveals, and I'm using the word her here, but merely reveals her confusion about how to respond to the unsolicited sexual advances. That was the language this court used in the Benavides case. It referred to those as unsolicited sexual advances and that person's response. And in this case, I think she was in the same position. Otherwise she would have run out of the room, or as I said in the brief, maybe smack the doctor. But there was confusion because it was like, oh yeah, you are supposed to be touching me. I don't think I've ever had that happen quite like that before. And I'm a bit confused about it. Are there any cases that have extended Benavides sort of rationale to a medical sexual assault like this, or are you asking us to take some new ground? I am asking you to take some new ground insofar as I haven't found that particular issue, your honor. And I think, again, I think that there was ambiguity, there was confusion in how to respond to something that was unsolicited in Benavides. And I think that's what happened here. I think there was a transference phenomenon in that case. And I think that was important to this court's decision. And I think it's important here. If I might move on from this question about negligence to discuss the related function test under 233E. And one of the cases we signed is Brignac. And it talks about in that case how an entity for them to be covered under the FSHCAA, it must be deemed to be an employee of the public health service. And in that case, Brignac cites 42 USC 233H. And what it says is it requires the entity to have implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related function. And it's important for two reasons, because it's distinguishing between medical malpractice and lawsuits arising out of any health-related function. And 233H clearly sees policies and procedures, such as supervision and training, and then the vetting process that it refers to, i.e. hiring, as very much related functions in the overarching medical context. Well, outside of Brignac, have you found any cases that have held that? I mean, Brignac seems to be an outlier relative to that point. That's my first question. And two, how is this really a related function to the practice of medicine? To ask please first the Brignac question, because I didn't find any cases that have ruled in that same fashion. Well, Regaglia is another case that says the same thing. And they essentially said it's inextricably woven in the performance of medical functions. This was a duty to report sexual abuse, but it had nothing to do with the actual medical treatment that was being provided, I guess, if related functions can't relate to other things. But the idea was this training and supervision. The other case you mentioned, was that a sexual assault case too, involving the same negligent training and hiring thing? The Regaglia case? Correct. I mean, it was a case that involved a nurse and the failure to report sexual abuse with minors. But the court said... That's a little stretch from the factual pattern we have here, isn't it? I mean, in that case, the plaintiff had alleged that defendants and the physician employer were reported abuse. And as it relates to Community Health Center here, that's the same thing. There was reports of this and a failure from them to do something about it. And if the vetting of bringing somebody who has a history of sexual misbehavior in the medical context, if vetting that, and then also supervising that and your other healthcare providers in that context to ensure that doesn't happen, isn't inextricably linked to the actual provision of the healthcare. I don't know what it is. And we know that it's related, because that's what happened. We know that it's a related function, because in an examination room with another medical provider, and we allege negligence against Nurse Martinez too, which is kind of the third prong of this. But in this and then that nurse leaving and not paying attention, if the supervision of that isn't inextricably linked to what happened in that room, and the fact that it didn't get caught or addressed in that moment, I don't know what would be because it is that failure, that breakdown. Well, what about the plurality of sure, what is sure, why does, I think it was Justice Rehnquist, why doesn't that suggest that even if one were to suggest that there were some negligence here, that that negligence arises out of the assault and battery, and therefore, why shouldn't it be barred? So the Scherer case, you're right about that. What I'm arguing under 233 is that if the court determines no, this does not arise out of negligence, it arises out of assault and battery, and therefore it is barred, at least under the intentional tort exception, 233 subsection E carves back some of that. And the Scherer analysis doesn't include that. That's part two. And that's what this court did in the Franklin case. But the whole first part of the Franklin case is this court says, yeah, this arises out of battery instead of negligence. But that inquiry doesn't stop there. Once we've determined that a case arises out of battery. Otherwise, the exception under 233 E doesn't even make sense, because it talks about cases arising out of assault and battery. And so I thought that perhaps I thought that exception, that exception to the perhaps exception to the exemption was designed to get at this informed consent phenomenon. I mean, in which what you had was the provision of medical care, but you didn't have informed consent. And because you didn't have informed consent, it was in technically a battery. But But that's, but that's not what you have here, is it? No, it's not. But the language of 233 A, and there's a case from this second, second circuit quote, Kobe, more to Sugo to 22 at 3d 99. You know, they assert that 233 provides immunity only for medical malpractice claims. And the court says, No, it doesn't. It doesn't say that that's one type of it. But that's not the language that's used there specifically. And and we would say that nurse Martinez, her negligence is independent negligence, that that would fall under the 233 exception, even though assault and battery is also involved. But we think negligence in that context means, you know, assault and battery arising out of medical malpractice, medical negligence, overarching kind of situation. Is what is what your performance of a medical function? The magistrate judge had some issue with that. I believe Yes, I believe that it very much is. And again, I would distinguish this from another type of assault that would happen if she had seen a family practitioner, or if, for example, she wasn't even a patient and just happened to be there. But she was charged for this. She went, she scheduled the appointment, she was charged for it, it got processed through insurance, she went into examination room, there was a nurse present, the doctor was there, he was wearing gloves, and in fact, did do a number of things connected to the examination, there are medical records that would support that. And it would require him to examine and touch her breasts and examine and touch her genitals. So I think it very much is. And, you know, our position is the doctor crossed the line. Council, your time is expired. Unless further questions. Okay, very good. Mr. Sturgill. Good morning, may it please the court. My name is Lowell Sturgill. I'm appearing from the Department of Justice representing the United States. The district court correctly dismissed this complaint, because plaintiff's claims allege either assault or battery or claims that arise out of assault or battery. And because the Public Health Health Service Act section 233. He did not expand the United States waiver of sovereign immunity to apply to claims of sexual assault by a gynecologist as plaintiffs wrongly allege. And why don't you start by talking about the relationship between 233 E and and the sure plurality and why he according to opposing Council to 33 would eliminate that problem. The share arising out of assault and battery that we have here. So this court discussed similar provision to Section 233 E in the Franklin case. I think that's really the key case to look at. And Franklin explained the following. It explained at the time, these immunity statutes had been enacted and provided immunity for Public Health employees and other types of employees. It didn't account for claims of medical batteries. Those are, as the court has discussed, claims of unauthorized surgery or medical practices. So what that meant was in those kinds of cases, public health service doctors could still be held personally liable for those kinds of torts. So as Franklin explains, what Congress did was try to fix that problem. And it did so by expanding the waiver of the United States sovereign immunity to those particular kinds of claims, which is to say, medical batteries or medical services are provided without consent. So again, I think Franklin lays all this out. It's all correct. I'm sorry, your honor. Go ahead. I'll wait to finish your thought. So I think Franklin covers this. And then also it's consistent with the language of 233 E, which refers to a waiver for assault and battery claims that arise out of negligence in performance of medical, surgical, dental, or related functions. And there, the focus was on the medical, surgical, and dental kinds of functions, not the kind of claims that plaintiffs are bringing here with a, in respect to training or the seeing if somebody's in the room with a doctor and the term related, I think, you know, has to be understood in the context that it's provided in, in the plain language of the statutes related in the sense that if it's a medical malpractice claim. And I think that's an additional point we've said is you can affirm the dismissal of this case on the ground that as plaintiffs actually admitted in their brief, 233 E only waives the United States sovereign immunity for medical malpractice claims. And they don't have any medical malpractice claims here. What about the claim against the nurse who didn't do her proper perform a proper function of being there? That seems to be, to be a critical part of her duties to be, be there when a male doctor is examining a female patient. So our position on that, wasn't that negligence in the performance of her medical duties? Well, first of all, your honor, there's plaintiffs cite no case, which suggested Wyoming or any others. I'm sorry. Yeah. Well, so this doesn't happen very often. That's, that's all that proves. I didn't, I didn't, uh, the fact that they don't cite a case doesn't foreclose their claim. And the claim certainly seems to be based on the statutory language. Well, again, I think, go ahead. I'm sorry. I think our point, our point about no cases that they also have no theory. I write a, a, a malpractice claim is a claim that the provider provide services that are below the standard of care that are relevant to the community in particular. And that's not the kind of claim here. What they seem to be saying is the hospital has some kind of undefined duty. I don't know where it comes from, but it's not a medical malpractice duty to make sure that nurses follow around. The statute doesn't say medical malpractice. I'm not sure that the plaintiff made the concession that you're describing, but the language of the statute says that the assault exception from liability in 26 ADH shall not apply to assault or battery arising out of, I assume that means in part caused by negligence in the performance of medical, surgical, dental, or related functions. And boy, that I don't see why that doesn't apply to the nurse's failure to stay in the room. Explain that language doesn't fit. So again, I, I'm sorry if I repeating myself, but our first point is we think this language only authorizes medical malpractice actions. And our second point is we don't think they've alleged a medical malpractice action with respect to the nurse because they haven't come up with a theory that fits. Yeah. Don't we go by the language of the statute and the statute doesn't say medical malpractice. And so that I'm trying to think, I guess it's the second circuit rejected the view that it has to be something traditionally caused medical about called medical malpractice to be included in this exception. Congress could well have used language that prohibited this. I'm not sure it wouldn't be medical malpractice, but regardless of whether it's fits some definition of medical malpractice, why does it not fit the language of the statute, which is, should be where we start. So again, your honor, I think we've laid out what our view of the language of the statute is. You focus on the term, medical, surgical, dental functions, and those are, those all alleged medical malpractice. And when I say, are you saying our Franklin decision adopts that view as well? Yes, your honor. And the point about Franklin is that Franklin explained what the purpose of this provision was. And the purpose of the provision was to authorize the waiver of sovereign immunity for one particular type of tort for a medical battery, which is medical malpractice. So, and then if you look at the language in 233E is very similar to the language in 233A. That's the basic waiver of sovereign immunity for suits against public health service employees and against deemed community health service employees. And that language was put into the statute because this immunity was provided because Congress found that public health service employees didn't make enough money to be able to afford to purchase malpractice insurance for themselves. And so there was a big problem there. And they wanted, Congress wanted to encourage people to practice in the profession and work for the public health service. So it, through this provision, authorized a waiver of sovereign immunity for the United States and provision of immunity for the doctors and for medical malpractice actions. So again, the context. Let me ask you a question, just so I'm sure that I understand what you're saying. As far as nurse Martine is not staying in the room, which may well have stopped the abuse, but she didn't stay in the room. You're saying that her leaving the room was not negligence and performance of a medical function because staying in the room isn't a medical function. Is that what you're saying? A medical function would be treatment as opposed to presence. That would be one thing we're saying. That's correct. That's one way to look at the statute. We agree with that. We also think as, as I explained, sort of another way to say about the same thing is that the statute only waives a sovereign immunity for, for medical malpractice. And that what she did was alleged to have done. There's no sense in which there's no proof that that would be considered medical malpractice under Wyoming law or any other state's law. So we really have two points that I think are very similar on that. If I could discuss the Benavides point for a moment, the district court in our view correctly held that Benavides is distinguishable from this case for two reasons. And I think the I just wanted to reiterate that the first is that the plaintiff in this case alleges that the, the alleged sexual assault was, was unconsented. And the plaintiff in Benavides alleged that it was consented. Second court in Benavides made it clear that the theory in that case was based on the transference phenomenon. And importantly, that that phenomenon occurs, the court said only in psychotherapy and the plaintiff this morning council has, I think, an incorrect misunderstanding of what transference is. Benavides explained that, and basically transference in the, in the psychiatric setting occurs when the patient projects onto the therapist feelings that the patient has for another person, essentially treating them as the other person. And that's what the psychiatrist is supposed to handle. Plaintiff's theory is completely different. Plaintiff says that, well, that should also apply here where there's a, a trust relationship. And that's not what Benavides was discussing at all. And I wanted to point the court. This is important too, to the, there's a case that Benavides cites. It's a ninth circuit case called Simmons and Simmons specifically addressed sexual assaults by gynecologists. And it said that would not count that would not authorize, you know, constitute medical malpractice. And it's, it also made the point that, well, if, you know, there are lots of other professions that have trust relationships with clients. It said, for example, if a lawyer were to commit sexual assault on a client, that would be obviously a breach of professional ethics, but it wouldn't be, it wouldn't be legal malpractice. And the court said a similar thing about gynecologists in particular. So again, I think Benavides cited that case with approval, and that's a significant point on that issue. The plaintiff has with, with respect to the other claims for negligent hiring training and supervision, we think all arise out of the assault and Shearer makes clear and Franklin agrees that plaintiff can't avoid the 2680 bar by reframing a claim in terms of negligent failure to prevent assault or battery. And that's what we have here. Plaintiff tries to, we haven't talked about the Sheridan case, but the plaintiff in the brief said that this case comes under the Sheridan exception. Sheridan basically held that 2680H is inapplicable where an employer has generalized duty to the public that has nothing to do with the tort fees, employment status and doesn't Wyoming law and close a duty on landlords to take reasonable steps to protect tenants where there is a based upon past experience, some possibility of criminal honors. So that's correct. Your honor. I think the most important thing about that is that that's Wyoming statute one dash 39 dash 106. And that statute only, only imposes duties on hospitals with respect to their own employees. So I was talking about, I was talking about a Warwick case, Warwick versus accessible space incorporated speaks specifically about a generalized duty that landlords have to protect visitors with who may be subject to criminal acts by tenants on the premises. And that's a generalized duty that would apply presumably to anyone who is, who is providing a common space to protect their, their occupants invitees from criminal acts. Well, several responses. First of all, the complaint does not allege a premises liability claim at all. Second point is that if you agree with us that section two 33 waves, the United claims, well, the premises liability claim is obviously not a medical malpractice claim. And third, I think that's that case has to be read in light of the Wyoming statute, which creates this duty to begin with. And that statute applies only to the acts of employees. In the reply brief, the plaintiffs also cite a Wyoming statute 35 dash two dash nine one 12 B, which imposes a duty on a hospital to have a patient safety officer. There are two things to say about that. One is that that statute actually expired by its own terms in 2010 subsection K, the statute is a sunset provision. So it wasn't even in effect at the time of the events of this suit. It also only impose a reporting duty. And that's not what plaintiffs are talking about here. And then the plaintiffs also cite some cases, Char Smith and Romero in the reply brief, which they claim imposes a duty on hospitals to protect patients from just anybody. But the problem of that theory doesn't work either. For a couple of reasons. First of all, Char Smith explains to the duty that the court discussed in his case would be applied only under a direct negligence or an apparent authority theory, but neither of those theories is actionable under the FTCA. Only responding and superior claims are actionable. So for that reason, we think those cases are distinguishable as well. And I see my red light is on. So any questions? No. Thank you, counsel. I don't think Mr. Biggis had any time remaining, but I've been giving balance a little extra time. So if you have something, we'll give you 20 seconds, 20, well, 30 seconds if you want to respond. Thanks, your honor. Briefly, as the court noted, the circuit, the Second Circuit said in the is done so explicitly referencing 38 USC 7316 for quote, for damages for personal injury, allegedly arising from malpractice or negligence of a medical care employee and quote. So use is really specific language there. And I think that means that it's not limited to medical malpractice. Nurse Martinez. Thank you. There's Martinez. Yep. Thank you. Thank you, counsel. Case is submitted. Counselor excused.